# GROUP EXHIBIT A

**FILED**
**06-27-2024**
**Anna Maria Hodges**
**Clerk of Circuit Court**
**2024CV005137**
**Honorable J. D. Watts-15**
**Branch 15**

| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE |
|---|---|---|

Wesner Development, LLC vs. Class One Professionals LLC

**Electronic Filing Notice**

Case No. 2024CV005137
Class Code: Money Judgment

---

CLASS ONE PROFESSIONALS LLC
SUITE 333
2800 E. ENTERPRISE AVE
APPLETON WI 54913

Case number 2024CV005137 was electronically filed with/converted by the Milwaukee County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a fee to register as an electronic party. This fee may be waived if you file a Petition for Waiver of Fees and Costs Affidavit of Indigency (CV-410A) and the court finds you are indigent under §814.29, Wisconsin Statutes.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: 68b270**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 414-278-4140.

Milwaukee County Circuit Court
Date: June 27, 2024

GF-180(CCAP), 11/2020 Electronic Filing Notice    §801.18(5)(d), Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Case 2:24-cv-00947-BHL    Filed 07/25/24    Page 2 of 25    Document 1-1

FILED
06-27-2024
Anna Maria Hodges
Clerk of Circuit Court
2024CV005137
Honorable J. D. Watts-15
Branch 15

STATE OF WISCONSIN    CIRCUIT COURT    MILWAUKEE COUNTY

WESNER DEVELOPMENT, LLC
1950 South Springdale Road
New Berlin, WI 53146

      Plaintiff,

    v.

                         Case Codes:    30301, 30303, 30304, 30404

CLASS ONE PROFESSIONALS LLC
2800 E. Enterprise Ave.
Suite 333
Appleton, WI 54913

      Defendant.

---

## SUMMONS

---

THE STATE OF WISCONSIN

TO DEFENDANTS NAMED ABOVE:

**YOU ARE HEREBY NOTIFIED** that the Plaintiff, Wesner Development, LLC has filed a lawsuit or other legal action against you. The *Complaint*, which is attached, states the nature and basis of the legal action.

Within 20 days of receiving this *Summons*, you must respond with a written Answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the *Complaint*. The Court may reject or disregard an Answer that does not follow the requirements of the Statutes. The Answer must be sent or delivered to the Court, whose address is, Milwaukee County Courthouse, 901 N. 9th Street, Milwaukee, WI 53233, and to the Plaintiff's attorneys, at the address set forth below. You may have an attorney help or represent you.

If you do not provide a proper Answer within 20 days, the Court may grant judgment against you for the award of money or other legal action requested in the *Complaint*, and you may

lose your right to object to anything that is or may be incorrect in the *Complaint*. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced as garnishment or seizure of property.

Dated: June 27, 2024

**HURTADO ZIMMERMAN SC**
Attorneys for Plaintiff,
Wesner Development, LLC

By:    *Electronically signed by Brian R. Zimmerman*
        Brian R. Zimmerman
        State Bar No. 1072563

**P.O. ADDRESS:**
1011 N. Mayfair Rd., Ste. 204
Wauwatosa, WI 53226
Phone: (414) 727-6250
Email: bzimmerman@hzattys.com

**FILED**
**06-27-2024**
**Anna Maria Hodges**
**Clerk of Circuit Court**
**2024CV005137**
**Honorable J. D. Watts-15**
**Branch 15**

STATE OF WISCONSIN     CIRCUIT COURT     MILWAUKEE COUNTY

---

WESNER DEVELOPMENT, LLC
1950 South Springdale Road
New Berlin, WI 53146

        Plaintiff,

    v.                         Case No.
                               Case Codes:    30301, 30303

CLASS ONE PROFESSIONALS LLC
2800 E. Enterprise Ave.
Suite 333
Appleton, WI 54913

        Defendant.

---

## COMPLAINT

---

NOW COMES the Plaintiff, Wesner Development, LLC, by its attorneys, Hurtado Zimmerman, S.C., as and for its Complaint against Defendant, Class One Professionals LLC, appearing and alleging and showing to the Court as follows:

     1.      Plaintiff, Wesner Development, LLC doing business as Snow Patrol ("Snow Patrol"), is a Wisconsin limited liability company with its principal place of business at 1950 South Springdale Road, New Berlin, WI 53146, and is a contractor providing winter maintenance services, including snow plowing and salting.

     2.      Defendant, Class One Professionals, LLC ("Class One") is a foreign liability company with a registered address in Wisconsin of 2800 E. Enterprise Ave., Suite 333, Appleton, WI 54913, and registered agent of Registered Agents Inc.

### JURISDICTION AND VENUE

     3.      Snow Patrol realleges and incorporates by reference each and every one of the foregoing paragraphs as if fully set forth herein.

4.    Jurisdiction over Class One in this Court is proper pursuant to Wis. Stat. § 801.05 (2)(d), (5)(a) because: Class One is a foreign registered limited liability company engaged in substantial and not isolated activities within the State of Wisconsin, this action arises out of materials, labor and services provided by Snow Patrol as a subcontractor to Class One for improvements upon real property within this State, such performance within this State being authorized and ratified by Class One.

5.    Venue in Milwaukee County is proper as it is the County where the claim arose, and where Class One does substantial business.

GENERAL FACTS

6.    Class One entered into a contract with Union Pacific Railroad ("Union Pacific") to perform certain services for winter maintenance at the Union Pacific, "Butler Yard Site" located at or about 4823 N. 119th Street, Milwaukee, Wisconsin, and more particularly described as:

**Parcel Taxkey:** 2199996001
**Parcel Address:** N 119TH ST WAUWATOSA WI, 53225
**Legal Description:** NW QUAR SEC 6 7 21 ALL EXC N 185 FT LYING IN MILW OF THAT PART OF W HALF OF SD QUAR SEC USED AS OPERA TING RAILWAY PROPERTY EXC THAT PART TAKEN FOR N 119 TH ST AND EXCEPT CSM NO 5650 - 1992

**Parcel Taxkey:** 2199996002
**Parcel Address:** N 119TH ST WAUWATOSA WI, 53225
**Legal Description:** CERTIFIED SURVEY MAP NO 5650 LOCATE D IN THE NW QTR SEC 6 7 21 PARCEL 1 -1992

**Parcel Taxkey:** 2579997004
**Parcel Address:** RAILROAD RIGHT OF WA WAUWATOSA WI, 53222
**Legal Description:** SW QUAR SEC 6 7 21 COM 1057 FT E & 60 FT N OF SW COR OF SD QUAR SEC; TH N PAR TO W QUAR SEC LI 201 FT TH E PAR TO S QUAR SEC LI 100 FT TH N PAR TO W QUAR SEC LI TO N LI OF SD QUAR SEC TH W TO PT 411.64 FT E OF NW QUAR SEC COR TH S TO A PT IN ONE EIGHTH SE

**Parcel Taxkey: 2189991124**
**Parcel Address:** 11926 W. Hampton Ave., Milwaukee, Wisconsin
**Legal Description:** LANDS IN SW 1/4 SEC 31-8-21 COM 1438.86' W & 83' N OF SE COR SD 1/4 SEC-TH N 362.38'-TH W 175.91'-TH NW 151.35'-TH NW 296.53'-TH NE

2

350'-TH E 87.13' -TH SE ALG A CUR 141.04'-TH E 71.41'-TH N 12.51'-TH W 15'-TH
N 40'-TH W 30'-TH N 530.94'-TH E 60'-TH N 100.06'-TH E 220' -TH N 244.94'M/L-
TH W 40'-TH N 20'-TH W 270'-TH NW 138.78' -TH NW 84.58'-TH NW ALG A CUR
169.66'-TH NW 342.20'-TH N 315.29'-TH W 200'-TH S 493.73'-TH E 54.92'-TH S
2096.20'-TH E 363.96'-TH N 107'-TH ELY ALG NLY LI OF W HAMPTON AVE TO
BEG.

7.    Class One's contract with Union Pacific included supplying snow and ice control

services, including plowing and salting of the Butler Yard Site.

8.    To supply the plowing and salting services at the Butler Yard Site, Class One

subcontracted with Snow Patrol beginning in, or about, 2018.

9.    In 2018 Class One and Snow Patrol entered into a Sub-Contractor Agreement for

Snow Patrol to provide snow and ice removal services at the Butler Yard Site.

10.    Pursuant to such Sub-Contractor Agreement, as renewed, for each successive

winter/snow season, Class One made payment to Snow Patrol upon invoice for snow and ice

removal work at the Butler Yard Site, including paying for salt supplied and consumed for such

work.

11.    Class One continued to pay for the salt supplied and consumed by Snow Patrol for

invoices up to December 2020.

12.    For the 2021/2022 snow season, Class One, as "Construction Manager" and Snow

Patrol, as "Sub-Contractor" entered into a written Contract dated December 1, 2021 for Snow

Patrol to provide the plowing and salting services at the Butler Yard Site.

13.    A true and correct copy of the Contract, further identified as Purchase order

Number: SP5829UP-01, is attached hereto as **Exhibit A**.

14.    The Scope of Work for the Contract identified that Class One or Union Pacific to

supply or reimburse Snow Patrol for all salt used under the Contract, which salt usage was to be

identified by Snow Patrol on its invoices.

3



Scope of Work Description
1. Surfaces within Blue Lines included in scope.
2. ~~Gravel areas/roads to be plowed - No salt to be used~~ *MRW  1-21-22  GWH 1-20-2022*
3. Concrete pavement/roads to be plowed and salted
4. Concrete walking surfaces identified by the Customer are to be plowed, shoveled, and salted.
5. Special conditions as specified below

    a. ~~ALL~~ *Class one or Union Pacific is to supply or reimburse Snow Patrol for all salt used for this contract. Salt tons ~~won~~ used will be submitted on each invoice. MRW 1-21-22*

    *GWH 1-20-22*

15.     During the period from December 2020 through March 2024 Snow Patrol provided snow plowing and salting services for the Butler Yard Site pursuant to the Contract.

16.     Snow Patrol submitted regular invoices during such period to Class One, which invoices identified the monetary charges for the snow plowing and salting services as well as identified the quantities of salt supplied by Snow Patrol and used in the salting operations.

17.     Class One received, retained, and paid the amounts as stated in the invoices for the plowing and salt application services.

18.     Class One did not contemporaneously object to any of the amounts as stated in the invoices for the salt identified as supplied by Snow Patrol and used in the salt applications.

19.     Snow Patrol regularly requested that Class One supply salt for replacement of the salt supplied and used by Snow Patrol, as stated in the invoices.

20.     Class One made numerous promises to Snow Patrol to honor the requirements for supply of replacement salt.

21.     Such promises included representations by Gary Hook, Vice President of Operations for Class One stating in e-mail on June 22, 2022, that "The requirements were that you are to show the SALT TONS used on each invoice and "Class One or Union Pacific is to supply

4

those equivalent salt tons. You have shown the tonnage used and we are to replace that tonnage which I understand is being taken care of."

22.     Such promises included additional representations by Gary Hook, Vice President of Operations for Class One stating in e-mail on June 22, 2022, that "Additionally, last week Michael Clark and Kurt Diana had a conversation about this issue directly with Mark Wesner and all agreed with the language in the contact of the replenishment plan. Apparently the issue in the past has been one of communication regarding salt deliveries and getting a response back. We have full intentions of honoring this plan."

23.     Class One made representations that Union Pacific would be supplying replacement salt, however, none, or minimal, salt deliveries occurred during the relevant time period.

24.     Despite Snow Patrol following the process for submitting invoices identifying the salt tonnage used, and repeated requests for Class One to supply replacement salt, Class One failed and refused to supply replacement salt to Snow Patrol.

25.     For the period between December 2020 through March 2024, Snow Patrol supplied salt which were used on the Butler Yard Site including 2,007 tons of road salt and 361 bags of small particle water softener salt

26.     The value of the salt supplied by Snow Patrol, along with the costs of trucking of such salt to the Butler Yard Site exceeds, $188,000.00.

27.     Despite demand, Class One has failed to supply replacement salt, or otherwise reimburse Snow Patrol for the value of the salt supplied for the Butler Yard Site.

28.     Union Pacific reported that Class One has submitted invoices to Union Pacific for salt supplied for the Butler Yard Site, which invoices were paid by Union Pacific.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT
(against Class One)

29.      Snow Patrol realleges and incorporates by reference each and every one of the foregoing paragraphs as if fully set forth herein.

30.      A contract existed between Snow Patrol and Class One for the winter maintenance services, including the obligation to supply or reimburse Snow Patrol for salt supplied for the salting operations.

31.      Class One has breached its contract with Snow Patrol by failing to supply or reimburse Snow Patrol for salt supplied for the salting operations.

32.      As a result of Class One's breach of the parties' contract, Snow Patrol has been damaged in the amount of the value of the salt supplied, which exceeds $188,000.00 plus statutory interest of 5% per annum from the date of each invoice.

### SECOND CAUSE OF ACTION
### QUANTUM MERUIT (CONTRACT IMPLIED-IN-FACT)
(against Class One)

33.      Snow Patrol realleges and incorporates by reference each and every one of the foregoing paragraphs as if fully set forth herein.

34.      Class One requested Snow Patrol to provide the winter maintenance services, including the salt supplied for the benefit of Class One.

35.      Snow Patrol provided winter maintenance services, including the salt supplied for the benefit of, and as requested by, Class One.

36.      Class One accepted the winter maintenance services, including the salt supplied by Snow Patrol, and retained and used same for Class One's benefit, including to obtain payment from Union Pacific for such services and the salt.

6

37.     Snow Patrol has made demands of Class One for payment for the full value of the unreimbursed salt.

38.     Despite Snow Patrol's demands, Class One has refused to pay Snow Patrol for the full value of the unreimbursed salt.

39.     The failure of Class One to pay Snow Patrol the full value of the unreimbursed salt constitutes a breach of contract implied-in-fact (*Quantum Meruit*).

40.     As a consequence of Class One' failure to pay Snow Patrol the full value of the full value of the unreimbursed salt, Class One is liable to pay Snow Patrol for the reasonable value of the full value of the unreimbursed salt, in an amount to be determined by the trier of fact.

<u>THIRD CAUSE OF ACTION</u>
<u>THEFT BY CONTRACTOR</u>
(<u>against </u>Class One)

41.     Snow Patrol realleges and incorporates by reference each and every one of the foregoing paragraphs as if fully set forth herein.

42.     The maintenance services and salt supplied by Snow Patrol were used and consumed for the benefit of the real property identified as the Butler Yard Site.

43.     Class One  was paid by Union Pacific, the owner of such real property identified as the Butler Yard Site, that was improved by the maintenance services and salt supplied by Snow Patrol.

44.     The payments by the Union Pacific to Class One constituted trust funds for payment of claims due for the services and salt used or consumed for the the improvements to the real property pursuant to Wis. Stat. §779.02(5).

45.     Class One used the monies paid for such improvements for purposes other than paying the amounts due Snow Patrol for the maintenance services and salt supplied by Snow Patrol.

46.    Class One's misappropriate and use of the trust funds for purposes other than payment of the claims related to such project was intentional.

47.    Class One's use of such monies for purposes other than payment of Snow Patrol constitutes theft pursuant to Wis. Stat §§ 779.02(5) and 943.20.

48.    Pursuant to Wis. Stat. §895.446, Snow Patrol is entitled to recover its actual damages, together with all costs of investigation and litigation, and exemplary damages of three times the amount awarded for actual damages.

**WHEREFORE**, Plaintiff, Wesner Development, LLC doing business as Snow Patrol ("Snow Patrol"), seeks judgment against Defendant, Class One Professionals, LLC ("Class One") as follows:

1.    As to the First Cause of Action Breach of Contract against Class One, for a monetary judgment in favor of Snow Patrol in the amount of all damages incurred, of not less than $188,000.00 plus statutory interest of 5.0% per annum.

2.    As to the Second Cause of Action *Quantum Meruit* against Class One, for a monetary judgment for damages in an amount to be determined at trial;

3.    As to the Third Cause of Action *Theft by Contractor* against Class One, for all damages incurred by Snow Patrol, together with all costs of investigation and litigation, and exemplary damages of three times the amount awarded for actual damages.

4.    For costs and disbursements of this action; and

5.    For such other and further relief as the Court may deem just and proper.

Dated: June 27, 2024

**HURTADO ZIMMERMAN SC**
Attorneys for Plaintiff,
Wesner Development, LLC

By: *Electronically Signed by Brian R. Zimmerman*

8

Brian R. Zimmerman
State Bar No. 1072563

P.O. Address
1011 N. Mayfair Road, Suite 204
Wauwatosa, WI 53226
Phone: (414) 727-6250
Fax: (414) 727-6247
bzimmerman@hzattys.com

9



**Purchase Order Number: SP5829UP-01**

This Contract made as of this 1st DAY OF December, 2021, by and between **Class One Professionals, LLC, 13500 Pearl Road, STE 139 #114, Strongsville, Ohio 44136** ("Construction Manager") and **Snow Patrol, 1950 S. Springdale Rd. New Berlin, WI 53146** ("Sub-contractor").

Construction Manager and Sub-contractor, in consideration of the covenants set forth herein below, agree as follows:

I   **DEFINITIONS**

    A. As used in this Contract, each of the terms set forth herein below shall have the respective meaning indicated opposite each such term.

| | |
|---|---|
| "Owner" | Union Pacific Railroad Company, its affiliates and partners. |
| "Project Site" | **Butler Yard**<br>**4823 N 119th St. and 2820 S. 7th St.**<br>**Milwaukee, WI 53215** |
| "Contract Amount" | Based on the attached rate sheet – Schedule B |
| "Completion Date" | As instructed by Class One Professionals, LLC Project Manager. |
| "Construction Manager" | Class One Professionals, LLC<br>13500 Pearl Road, STE 139 #114<br>Strongsville, Ohio 44136 |
| "Work" | The work specified in Schedule A including all labor, services, supervision necessary to fully perform and complete the requested work. |
| "Contract Duration" | Contract Termination Date is May 1, 2022. |

II   **PERFORMANCE OF WORK**

    A. Sub-contractor shall furnish and pay for all necessary labor, materials, services, supervision, equipment and other things necessary to fully perform and complete the Work, in cooperation with others employed by, through and/or under Sub-contractor, in a good and workmanlike manner satisfactory to Construction Manager and Owner.

    B. Sub-contractor shall diligently execute the Work so as to fully complete the Work. Time is of the essence of this Contract, and Sub-contractor acknowledges that Construction Manager and Owner will suffer losses on account of the failure of Sub-contractor to fully complete the Work in a timely fashion in accordance with this Contract. In the event the Sub-contractor fails to complete the Work within the time period provided, the Sub-contractor shall be liable to Construction Manager and Owner for actual damages incurred. This sum is to be considered as liquidated damages and not as a penalty. The Construction Manager shall be entitled to deduct any liquidated damages due hereunder from the Contract Amount. Should the liquidated damages exceed that portion of the Contract Amount owed to Sub-contractor, Sub-contractor shall promptly pay Construction Manager the difference.

    C. Sub-contractor shall perform the Work in accordance with the instruction and safety precautions with respect to the Work. Further, Sub-contractor in performing the Work shall comply with any safety regulations reasonably issued by Construction Manager

and/or Owner and shall take all necessary precautions to protect the work of others and the property of Owner from damage caused by the operations of Sub-contractor.

D. Sub-contractor warrants that Sub-contractor has visited the Project Site, has carefully examined the conditions and is familiar with the general and local conditions under which the Work is to be performed, and Sub-contractor acknowledges and represents to Construction Manager that such conditions are adequate and suitable to permit Sub-contractor to fully complete the Work in a timely, all in accordance with this Contract.

E. Sub-contractor shall comply with and implement the provisions of any applicable laws relating to the presence or use of hazardous materials or substances on or about the Project Site. Before using on or about the Project Site any substance or material deemed under any applicable law to be a hazardous substance or material, Sub-contractor shall furnish Construction Manager with a copy of the material/safety data sheet (MSDS) for such material or substance and shall file a copy of such material/safety data sheet along with all other required information to any and all governmental agencies having jurisdiction over the presence of or use of such material or substance at the Project Site.

F. In the event that there exists a reasonable indication in the judgment of Construction Manager that Sub-contractor will not be able to complete the Work by the Completion Date, Construction Manager may, upon three (3) days' written notice to Sub-contractor and without prejudice to any other remedy Owner and Construction Manager may have, order Sub-contractor to execute the Work on an overtime basis, and, in such event, Construction Manager shall, at the sole expense of Sub-contractor, promptly commence and continue to perform the Work on such basis to the extent necessary to cause the Work to be fully completed in a timely fashion in accordance with this Contract.

## III   PAYMENT

A. Sub-contractor invoices shall be submitted by Sub-contractor in a form acceptable to the Construction Manager. Sub-contractors are encouraged to use the "Snow Plowing Invoicing Template" provided with this Contract so as to streamline processing of payment requests. In any case, invoices:
   1. Must include vendor's name, address and contact information.
   2. Must include the Purchase Order number on the invoice.
   3. Must be location specific (cannot combine locations onto the same invoice)
   4. Must be itemized by date of service, equipment used, hours of use, materials used and quantity.
   5. Include Contracted rates for equipment and materials.

B. Invoices must be emailed to: snowap@class1.net in PDF format completely legible.

C. Sub-contractor invoices should be submitted daily as work progresses. Construction Manager will submit payment within 45 days for all approved (meeting the requirements specified above) invoices submitted and received on a daily to weekly basis.

D. Construction Manager will submit payment within 60 days for all approved (meeting the requirements specified above) invoices submitted and received from 8 days to 30 days after service has been provided.

E. Construction Manager will submit payment within 90 days for all approved (meeting the requirements specified above) invoices submitted and received from 31 days to 60 days after service has been provided.

F. Invoices submitted beyond 60 days after services are provided will be rejected and will not be paid (Owner will not accept them).

G. Notwithstanding anything to the contrary set forth herein, no payment shall be due hereunder to Sub-contractor on account of any application for payment submitted hereunder unless Sub-contractor shall have submitted to Construction Manager satisfactory evidence of the payment by Sub-contractor of all indebtedness incurred by Sub-contractor for all Work included in all applications for payment previously paid hereunder. Further, notwithstanding anything to the contrary set forth herein, it shall be a condition precedent to the obligations hereunder of Construction Manager to approve payment to Sub-contractor that all applications for payment, waivers of lien, certificates of insurance and other documents then required to be furnished by Sub-contractor have been appropriately submitted hereunder to Construction Manager in accordance with this Contract.

H. Construction Manager may cause the proceeds of any payment payable hereunder to Sub-contractor to be applied directly to the payment of any indebtedness owed to any party retained by, through or under Sub-contractor in connection with the Work provided that Sub-contractor has failed to cause such party to be paid, or there is reasonable evidence that Sub-contractor will not cause such party to be paid, for any Work promptly after Sub-contractor has received payment hereunder on account of such Work.

I. The submission by Sub-contractor of an application for payment hereunder shall constitute a representation by Sub-contractor that no part of the Work included in such application for payment is affected by any lien, title retention agreement or security instrument made either by Sub-contractor or by any party retained by, through or under Sub-contractor in connection with the Work, and Sub-contractor acknowledges that all payments made hereunder to Sub-contractor are, to the extent of any indebtedness owed to any parties retained by, through or under Sub-contractor in connection with the Work, made to Sub-contractor for the benefit of and in trust for such parties.

J. All applications for payment, waivers of lien, certificates of insurance and other documents required to be submitted hereunder by Sub-contractor shall be in form and substance satisfactory to Construction Manager and Owner, it being specifically understood and agreed that the standard forms of such documents as published by Construction Manager, which such standard forms are annexed hereto and made a part hereof by reference, shall be utilized by Sub-contractor unless Construction Manager shall expressly advise Sub-contractor to the contrary in writing. The breach by Sub-contractor of any warranty, representation, covenant or other provision set forth in any applications for payment, waivers of lien, certificates of insurance or other documents submitted hereunder by Sub-contractor shall be considered to be a breach by Sub-contractor of the provisions of this Contract.

K. Payments withheld: The Construction Manager or Owner may withhold the whole or any part of any payment to protect against loss on account of:

1. Defective workmanship.
2. Claims filed or evidence reasonably indicating probable filing of claims.
3. Failure of the Sub-contractor to make payments properly to Sub-suppliers or for material or labor.
4. Damage to any equipment owned by Construction Manager.
5. Damage to another Sub-contractor.
6. Other Contract requirements unfulfilled.

## IV   LIENS AND CLAIMS

A. Sub-contractor shall pay, or cause to be paid, when due all amounts owing to parties retained by, through or under Sub-contractor in connection with the Work, including without limitation all claims for which a lien may be filed either against the real estate of

Owner or against payments due from Construction Manager to Sub-contractor. To the fullest extent permitted by law, Sub-contractor agrees that no liens or other claims against the real estate of Owner or against payments due from Construction Manager to Sub-contractor shall be filed in connection with the Work either by Sub-contractor or by any party retained by, through or under Sub-contractor in connection with the Work. If and to the extent that any liens and/or claims shall be filed in connection with the Work by or as a result of any act of omission of any party retained by, through or under Sub-contractor, Sub-contractor shall, within seven (7) days after the filing of any such liens and/or claims, cause such liens and/or claims to be discharged or otherwise satisfied. No payment on account of any application for payment submitted hereunder shall be due unless Sub-contractor has delivered to Construction Manager a complete release of all liens and/or claims arising out of the Work included in such application for payment.

## V    LAWS, ORDINANCES, RULES AND REGULATIONS

Sub-contractor shall give all notices required under, and shall comply with, all laws, ordinances, rules and regulations bearing on the project. The Sub-contractor shall maintain physical conditions and employee performance on the jobsite during the course of construction to conform to all local and federal laws, rules and regulations including those covered by the Occupational Safety and Health Act of 1970.

## VI    CHANGES IN WORK

A. Construction Manager may at any time order a change in the Work by issuing a written change order.

B. The Contract Amount shall not be increased on account of any additional or extra work or on account of any change in the Work unless Construction Manager has authorized such change in the Work in writing. If Sub-contractor claims that the Contract Amount should be increased as a result of any event or circumstance, including without limitation any instructions provided by Construction Manager or Owner and/or any act or omission of Construction Manager or Owner, Sub-contractor shall notify Construction Manager in writing of such claim within one (1) day after the first occurrence of any such event or circumstance and shall, after the first occurrence of any such event or circumstance, deliver to Construction Manager on each day that additional or extra work is allegedly performed by Sub-contractor a brief written report describing the quantity and character of any additional or extra work allegedly performed by Sub-contractor on such day.

C. No claim by Sub-contractor that the Contract Amount should be increased and no claim by Sub-contractor for any additional or extra work allegedly performed shall be valid unless Sub-contractor has notified Construction Manager in writing and has on a daily basis delivered to Construction Manager brief written reports as specifically required hereinabove and Construction Manager has approved such extra work.

## VII    RESPONSIBILITIES OF SUB-CONTRACTOR

A. To the extent that any arbitration proceeding or legal action between Owner and Construction Manager involves any act or omission of Sub-contractor or any Work required to be performed hereunder by Sub-contractor, Sub-contractor shall, if requested by Construction Manager, join in such arbitration proceeding or legal action as a party, it being specifically understood and agreed that Sub-contractor expressly consents to the jurisdiction and venue of, and agrees to be bound by any decision rendered in connection with, any such arbitration proceeding or legal action. Sub-contractor shall be responsible for the acts and/or omissions of all parties retained by, through or under Sub-contractor in connection with the Work.

## VIII  CORRECTION OF WORK

A. Construction Manager and Owner shall be entitled, but shall not be obligated, to inspect the Work and shall have the right to reject portions of the Work not in accordance with the requirements of this Contract, it being specifically understood and agreed that Sub-contractor shall promptly address rejected portions of the Work in a manner satisfactory to Construction Manager and Owner.

## IX  INDEMNIFICATION

A. Sub-contractor shall, to the fullest extent permitted by law and to the extent that any such claims, losses, liabilities or expenses are caused in whole or part by any act or omission of Sub-contractor, anyone directly or indirectly employed by Sub-contractor or anyone for whose acts Sub-contractor may be liable, regardless of whether any such claims, losses, liabilities or expenses are caused in part by a party indemnified hereunder, indemnify, hold harmless and defend Construction Manager and Owner and the agents and employees of Construction Manager and Owner from and against any and all claims, losses, liabilities and expenses, including attorneys' fees, arising out of or in any manner caused by, connected with or resulting from the performance of this Contract and/or the Work.  In any and all claims against the Construction Manager and Owner and their respective agents and employees, the indemnification obligation under this paragraph shall not be limited in any way by any limitation on the amount or type of damage, compensation or benefits payable by or for the Sub-contractor under Worker's Compensation acts, disability benefit acts, or other employee benefits acts.

B. Sub-contractor's indemnification and defense obligations hereunder shall extend to claims occurring after this Agreement is terminated as well as while it is in force and shall continue unit it is finally adjudicated and all actions against the indemnified parties for such matters which are indemnified hereunder are fully and finally barred by applicable laws.

## X  INSURANCE AND INDEMNITY

A. Worker's Compensation Insurance:

1. The Sub-contractor shall secure and keep in effect such insurance as will protect him from claims under all Worker's Compensation Laws, including Occupational Disease.
2. Certificates of such insurance shall be filed by the Sub-contractor with the Construction Manager and shall be subject to the Construction Manager's and Owner's approval as to carrier and adequacy, prior to commencement of work.
3. The Sub-contractor shall ascertain that all Sub-suppliers and Sub-Contractors of any tier secure and keep in effect similar insurance covering their employees.
4. Employers Liability Limits of no less than $500,000 Each Accident/$500,000 Disease Policy Limit/$500,000 Disease Per Employee.
5. A Waiver of Subrogation shall apply in favor of the Owner and Construction Manager.
6. The policy shall not contain endorsement WC120306 or similar endorsement limiting the amount or type of damage or compensation payable under the policy (applicable in Illinois only)

B. Liability Insurance

1. The Sub-contractor shall protect, indemnify and save Owner and Construction Manager harmless from and against any and all claims, demands, actions, causes of action, suits, judgment, liability, expenses including attorney fees, and damages arising or growing out of or connected with the project.

2. The Sub-contractor shall maintain and pay for Comprehensive General Liability Insurance, including Contractual Liability and Comprehensive Automobile Insurance, in a company or companies satisfactory to the Owner and Construction Manager, and file with the Construction Manager certificates of such insurance naming the Owner and Construction Manager as an additional insured with limits of at least the following:

3. Comprehensive General Liability Insurance, including:

Bodily Injury & Property Damage        -        $1,000,000 per occurrence
                                                              -        $2,000,000 aggregate
Personal & Advertising Injury            -        $1,000,000 per occurrence

4. Comprehensive Automobile Liability Insurance

Bodily Injury        -    $2,000,000 per person
                            -    $2,000,000 each accident
Property Damage    -    $2,000,000 per occurrence

5. Umbrella Liability Insurance        -    $2,000,000 limit

6. The insurance certificate must:
   a. Show that the Contractual Liability Coverage is applicable to the Agreement, and must set forth the address of the site to which such provision applies.
   b. Set forth in full the hold harmless agreement specified above.
   c. Include a provision that the Owner and Construction Manager will be given thirty (30) days written notice of cancellation, non-renewal or material changes of insurance coverage.

7. In addition to the certificate of insurance, the Sub-contractor will provide additional endorsements. Those endorsements should include:
   a. Construction Manager & Owner as additional insured to the General Liability, Auto Liability and Umbrella policies on a Primary & Non-Contributory Basis and Including Completed Operations.
   b. General Liability additional insured forms must be ISO CG2010 10/01 & CG2037 10/01 or equivalent (applicable in Illinois only).
   c. State that subrogation rights are waived under the Workers' Compensation, General Liability, Auto Liability & Umbrella policies.
   d. State that the insurer will notify the additional insured at least thirty (30) days prior to policy changes and cancellations.
   e. No work shall be performed under this Agreement unless the insurance coverage required hereunder shall be in full force and effect.

8. If at any time during the performance of this Contract the Owner or Construction Manager shall deem it necessary to increase the limits of liability set forth above, the Construction Manager shall notify the Sub-contractor of the new requirements and the Sub-contractor shall within fifteen (15) days thereafter furnish the Owner and Construction Manager duplicate copies of the rider or endorsement in compliance with such new requirements. The Owner shall pay for the cost thereof.

9. The fact that insurance coverage's are required as specified herein shall not prejudice in any way the Owner's or Construction Manager's claim against the Sub-contractor for total indemnity against any and all losses as hereinbefore stated.

10. All insurance required by this agreement must be maintained for period of at least two years following the completion of all work performed as part of this agreement.

## XI    PROTECTION OF WORK AND PROPERTY AND RISK OF LOSS

A. Sub-contractor shall protect the Owner's and Construction Manager's property against any and all damage.

B. If damage results in spite of these precautions, the Sub-contractor shall repair the damage. If the damage was caused by the Owner, the Owner's other Sub-contractors or the Owner's operation, the Owner will pay the Sub-contractor as outlined for

additional work in Article 6 of this Contract, but if such damage was caused by other persons, the Sub-contractor shall pay for repair of such damage or cause the correction thereof to the Owner's satisfaction.

C. Sub-contractor shall not trespass upon or in any way disturb adjacent property without first obtaining written permission to do so from the Owner of such adjacent property. The Sub-contractor shall restore all disturbed adjacent property to its original condition or such other condition as may be agreed in writing between Sub-contractor and such adjacent owner.

D. The provisions of this Article shall in no way relieve the Sub-contractor of liability for any loss for which he would otherwise be liable.

## XII   INSPECTION OF WORK

A. Owner and Construction Manager shall at all times have access to the Work wherever it is in preparation or progress.

## XIII   CONTROLLED ACCESS POLICY

A. Owner, Construction Manager and Sub-contractor have a mutual interest in providing a safe workplace for the employees of both parties and in maintaining the integrity and security of Owner's facilities. To help ensure this goal, the Owner has instituted a Controlled Access Policy. All persons seeking admission to Owner's property will apply (the "Applicants") for admission to the property. Construction Manager and its Sub-contractors, including its personnel and employees, must be in full compliance with the Controlled Access Policy prior to performing Work on Owner's property. Construction Manager and its Sub-contractors shall, at their sole cost and expense, conduct background investigations of Applicants prior to their admission to the property.

B. Prior to any new or existing employee of Construction Manager and Sub-contractor working at or regularly visiting any Owner's facility, Construction Manager and Sub-contractor shall register with Owner's approved risk assessment company (eRailSafe).

C. After registration, Applicants will be required to complete online training and testing. The program testing requires "Security Awareness" and "Contractor Minimum Safety Training". Additional training may be required based on the type of Work being done. Contact your contracting entity to determine any additional training required.

D. After an Applicant satisfactorily completes the training, the Owner's approved risk assessment company will do a background investigation and score the investigation to validate whether the Applicant meets all the criteria for admission to Owner's property. Upon validation, an Identification Badge authorizing access to Owner's property will be sent to Construction Manager's business address for distribution to the Applicant.

E. Owner shall have the right to reject any candidate to the extent permitted by all applicable law.

F. Applicant is responsible for wearing that badge and carrying another form of government issued ID, at all times, when on Owner's property.

G. Construction Manager and Sub-contractor shall be responsible for managing and recovering the Identification Badge from their employees who resign, retire or are terminated.

H. Construction Manager and Sub-contractor will be responsible for enforcement of this program, however, both the Owner and the Federal Railroad Administration may audit for compliance. Should Construction Manager and Sub-contractor be found out of

compliance, any and all fines or penalties incurred will be the sole obligation of the Sub-contractor.

I. Construction Manager will deduct the direct cost for managing the Sub-contractors employees' participation in this program from the Sub-contractors invoices. The cost will be a fixed $150.00 per employee regardless if the employee passes the background check or not.

J. It shall be the sole responsibility of the Sub-contractor to assure that all respective employees enter the Owner's property be certified by eRailSafe BEFORE entering the property.

## XIV COOPERATION AND LABOR POLICY

A. Sub-contractor shall not employ any labor which shall interfere either with the execution of any work at the Project Site or with labor harmony at the Project Site.

B. Sub-contractor shall properly connect and coordinate the Work with the work of other parties employed by, through or under Construction Manager or Owner.

C. Sub-contractor shall not, in performing this Contract, discriminate against any party because of race, creed, color, religion, sex or national origin.

D. Sub-contractor's employees that enter Owner's property shall provide COVID-19 vaccination verification as required.

## XV WASTE REMOVAL

A. Sub-contractor shall at all times keep the Project Site free from, and shall promptly cause to be removed from the Project Site, any accumulation of waste material and debris arising out of the operations of Sub-contractor or any party retained by, through or under Sub-contractor.

B. Upon completion of the Work, Sub-contractor shall remove from the Project Site all tools, scaffolding and excess materials brought to the Project Site by Sub-contractor or any party retained by, through or under Sub-contractor in connection with the Work.

## XVI USE OF JOBSITE

A. The Sub-contractor shall confine equipment and tools, materials, and the operations of the workmen to limits required by law, ordinances, rules, regulations or directions of the Construction Manager or Owner and shall not unreasonably occupy the jobsite with equipment, tools or materials. The Sub-contractor shall abide by and enforce the Construction Manager and Owner's instructions regarding signs, advertisements, fires and smoking at the jobsite.

## XVII FORCE MAJEURE

A. If Sub-contractor is delayed in the performance of the Work by any act, neglect or fault of Construction Manager or Owner or by any damage caused to the Project by fire, lightning, earthquake, cyclone or other circumstance completely beyond the control of Sub-contractor, then the Completion Date shall be extended for a period equivalent to the time lost by reason of any such circumstance.

B. Sub-contractor shall not be entitled to an extension of time for any such delay unless Sub-contractor gives Construction Manager written notice of such delay within five (5) days after the commencement of such delay, it being specifically understood and agreed that an extension of time shall be the sole remedy of Sub-contractor for any such delay

other than a delay caused by the willful act or omission of Construction Manager or Owner or a delay for which Construction Manager or Owner is compensated by insurance or otherwise.

## XVIII REMEDIES OF CONSTRUCTION MANAGER OR OWNER

A. Construction Manager may, upon three (3) days written notice to Sub-contractor, terminate this Contract without cause. In the event that Construction Manager terminates this Contract as set forth herein without cause, Construction Manager shall promptly pay to Sub-contractor a reasonable portion of the Contract Amount, less the aggregate of all payments made hereunder by Construction Manager, on account of the Work performed prior to the date of such termination.

## XIX SUBLETTING AND ASSIGNMENT

A. Sub-contractor shall neither assign this Contract nor Contract all or any portion of the Work without the prior written consent of Construction Manager. Further, Sub-contractor shall not assign any amounts due or about to become due hereunder without the prior written consent of Construction Manager. Construction Manager reserves the right to assign this contract to Owner at Owners request.

B. Construction Manager may, without prior written consent of Sub-contractor or any other party, assign the rights, obligations and duties of this contract to the Owner for any reason.

## XX APPLICABLE LAW

A. The terms and conditions of this Contract shall be construed in accordance with the laws of the state in which the Project is located. Subject to the obligation of Sub-contractor to join in any arbitration proceeding or legal action between Owner and Construction Manager as set forth hereinabove, any dispute between Construction Manager or Owner and Sub-contractor arising out of or relating to this Contract or the Work shall be resolved by litigation commenced in a court of competent jurisdiction in the state in which the Project is located, if such litigation is initiated in or within six months after the Project is fully completed, and in the state or federal courts of the State of Illinois, if such litigation is initiated after such period, it being specifically understood and agreed that Construction Manager or Owner and Sub-contractor expressly consent to the jurisdiction and venue of such courts. Sub-contractor shall continue to proceed with the Work and shall maintain the progress of the Work during any arbitration proceeding or legal action arising out of this Contract unless Construction Manager and Sub-contractor shall mutually agree otherwise in writing.

## XXI CONTRACT DOCUMENTS

A. All rights and obligations under this Contract shall inure to and be binding upon Construction Manager and Sub-contractor and the respective successors and assigns of Construction Manager and Sub-contractor.

B. No waiver, alternation or modification of any of the provisions of this Contract shall be binding upon Construction Manager unless such waiver, alteration or modification shall be in writing and signed by Construction Manager.

C. Sub-contractor shall, to the fullest extent permitted by law, indemnify, hold harmless and defend Construction Manager and Owner from and against any and all claims, losses, liabilities and expenses, including attorneys' fees, arising out of or in any manner caused by any breach by Sub-contractor of the provisions of this Contract.

D. Terms defined in this Contract shall have the respective meaning given such terms by this Contract.

IN WITNESS WHEREOF, Construction Manager and Sub-contractor have executed this Contract under seal as of the day, month and year first written above.

**Sub-contractor:**

Wesner Development LLC
DBA Snow Patrol

Sub-contractor s name –
State whether a
    Corporation     ( )
    Partnership     ( )
    Sole Proprietorship ( )

By _____ 1-21-22

Witness (for Sub-contractor)

member
(Title)

Witness (for Sub-contractor)

**Construction Manager:**

Witness

Witness

CLASS ONE PROFESSIONALS, LLC

By _____

VP of Operations
(Title)

# SCHEDULE A

## SCOPE OF WORK

Furnish all labor, equipment, tools, supplies, services and other necessary incidentals, and adequate supervision necessary to provide snow plowing services as directed by the Construction Manager.

**Site:** **Butler Yard**
4823 N 119th St. and 2820 S. 7th St.
Milwaukee, WI 53215



Scope of Work Description:
1. Surfaces within Blue Lines included in scope.
2. ~~Gravel areas/roads to be plowed - No salt to be used.~~ MR W  1-21-22  GWAT 1-20-2022
3. Concrete pavement/roads to be plowed and salted.
4. Concrete walking surfaces identified by the Customer are to be plowed, shoveled, and salted.
5. Special conditions as specified below:
    a. ~~BNSF~~ Class one or Union Pacific is to supply or reimburse Snow Patrol for all salt used for this contract. Salt tons ~~used~~ used will be submitted on each invoice. MRW 1-21-22
    GWAT 1-21-22

# SCHEDULE B

## RATES

The following rates shall be in effect for this contract:

| Snow Patrol | Milwaukee |
|---|---|
| Loader (including Operator) | $140.00/hour |
| Skid Steer (including Operator) | $85.00/hour |
| Snow blower (including Operator) | $55.00/hour |
| 4wd Truck w/Plow (including Operator) | $80.00/hour |
| End Dump w/Salt Spreader (including Operator) | $90.00/hour |
| Salt per bag | $25.00/bag |
| Operator (for non-supplied equipment) | To be Negotiated |
| Laborer | To be Negotiated |