UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

WESNER DEVELOPMENT LLC,

    Plaintiff,

                  Case No. 24-cv-0947-bhl

 v.

CLASS ONE PROFESSIONALS LLC,

    Defendant.

---

### ORDER DENYING MOTION TO TRANSFER

---

    Beginning in 2018 or 2019, Defendant Class One Professionals, LLC subcontracted its plowing and salting responsibilities at a Union Pacific Railroad rail yard in Butler, Wisconsin to Plaintiff Wesner Development LLC, d/b/a "Snow Patrol." In 2024, the parties had a falling out, leading Class One to terminate its relationship with Wesner. That termination, in turn, led Wesner to file this lawsuit in Milwaukee Country Circuit Court. Wesner seeks to recover amounts it contends Class One still owes for work done across the 2020-24 winter seasons. Class One removed the case to this Court and now invokes a forum selection clause in a December 1, 2021 purchase order to dismiss or transfer the case to a court in Illinois. (ECF No. 10.) For the reasons discussed below, Class One's motion will be denied.

### BACKGROUND

    Wesner is a Wisconsin limited liability company that provides winter maintenance services, such as snow plowing and salting. (ECF No. 1-1 at 5.) Class One is an Illinois limited liability company, doing business in Wisconsin and Illinois. (ECF No. 1 at 2; ECF No. 1-1 at 6.)

    At the times relevant to this lawsuit, Class One had a contract with the Union Pacific Railroad to perform winter maintenance services at a number of Union Pacific rail yards, including the Butler Rail Yard in Wisconsin. (*Id.* at 6–8.) Beginning in either 2018 or 2019, Class One subcontracted with Wesner to perform snow removal and salting services at the Butler Rail Yard. (*Id.* at 7; ECF No. 10 at 2.) The parties' relationship lasted several years, with Wesner providing services for Class One each winter from at least late 2019 until early 2024. (ECF No. 1-1 at 7, 9.)

The parties' documentation of their arrangement is less than fulsome. The parties have provided no evidence of how their arrangement was documented prior to the 2021–22 winter season. Their relationship is almost exclusively documented through a December 1, 2021 purchase order that Class One sent to Wesner, proposing terms for Wesner to provide winter maintenance services at the Butler Rail Yard for the winter of 2021–22. (*Id.* at 14.) Under the purchase order, Wesner would "furnish and pay for all necessary labor, materials, services, supervision, equipment and other things necessary" to provide snow plowing services. (*Id.*) Although the purchase order stated that no salt was to be used by Wesner, that term was later crossed out and initialed with wet ink on January 21, 2022, and a handwritten specification was added that "Class One or Union Pacific is to supply or reimburse Snow Patrol for all salt used for this contract." (*Id.* at 24.) The purchase order also contained a choice of law and forum selection clause:

> The terms and conditions of this Contract shall be construed in accordance with the laws of the state in which the Project is located. . . . [A]ny dispute between Construction Manager or Owner and Sub-contractor arising out of or relating to this Contract or the Work shall be resolved by litigation commenced in a court of competent jurisdiction in the state in which the Project is located, if such litigation is initiated in or within six months after the Project is fully completed, and in the state or federal courts of the State of Illinois, if such litigation is initiated after such period . . . .

(*Id.* at 22.) The purchase order indicates a "[t]ermination date [of] May 1, 2022." (*Id.* at 14.) A Wesner representative signed the purchase order on January 21, 2022. (*Id.* at 23.)

Wesner continued to provide services for Class One at the Butler Rail Yard during the following winter season as well, but it does not appear that Class One sent a new purchase order for that winter season. On December 1, 2022, a Class One representative sent an email to Wesner, stating that the original purchase order would "be extended for an additional term of 5 months," expiring on May 31, 2023, and that "[a]ll other terms and conditions stated in original contract [would] remain the same for the new dates of this extension." (ECF No. 10-4 at 2.) The email suggests that Class One assigned a new purchase order number to the offer, (*id.*), but the parties have not provided the Court with a physical copy of any corresponding document, if one exists. Wesner accepted the email's terms by continuing to perform. (ECF No. 1-1 at 8.)

The documentation is even scarcer with respect to the 2023 winter season. According to the parties, for this final year, Class One orally offered Wesner the opportunity to perform services from December 2023 until May 2024. (ECF No. 10-1 ¶10; ECF No. 12 at 6.) It is unclear when

the offer was made, but the parties agree that an offer was extended, and that Wesner accepted, whether orally or through performance. (ECF No. 10-1 ¶10; ECF No. 12 at 6.)

The parties' relationship came to an end in March 2024 due to a disagreement over salting. (ECF No. 1-1 at 9.) In the early days of their relationship, and before the December 1, 2021 purchase order, Wesner acquired its own salt for use at the Butler Rail Yard. (*Id.* at 7.) After buying and using the salt, Wesner would invoice Class One for its services and materials, including the cost of the salt. (*Id.*) Class One would then pay Wesner for its services and reimburse it for the salt and other materials it provided. (*Id.*) This practice continued for several years. (*Id.* at 8.) Beginning with the 2020–21 winter season, however, Class One stopped paying Wesner for any salt that it supplied. (*Id.* at 9.) Class One contends that it made clear to Wesner that Union Pacific would supply the salt for use at its facility and that Wesner was required to use that salt rather than supplying its own and then charging Class One. (ECF No. 10 at 2–3.)

In this lawsuit, Wesner alleges claims for breach of contract, quantum merit, and theft by contractor. (ECF No. 1-1 at 10–12.) It seeks to recover $188,000 for the salt it supplied across four different winter seasons (2020–21, 2021–22; 2022–23; and 2023–24), along with the costs of trucking of the salt. (*Id.*)

## ANALYSIS

Invoking the forum selection clause in the December 1, 2021 purchase order, Class One asks this Court to dismiss this case in its entirety without prejudice or to transfer it to the Northern District of Illinois. (ECF No. 10.) Unfortunately, application of the forum selection clause to the parties' multi-year relationship is far from straightforward. Wesner's claims include amounts allegedly due for the 2020-21 winter season, which *precedes* the purchase order altogether, a fact both parties ignore. In addition, the clause itself is uniquely worded, requiring that a dispute be filed in a particular jurisdiction, either Wisconsin (where the Project was located) or Illinois, depending on timing of the dispute in relation to the completion of the contract. More specifically, litigation must be "commenced in a court of competent jurisdiction in the state in which the Project is located"—*Wisconsin*—if the litigation is filed "within six months after the Project is fully completed." (ECF No. 1-1 at 22.) Any litigation initiated "after such period," must be commenced "in the state or federal courts of the State of *Illinois*." (*Id.* (emphasis added).)

Class One maintains that Wesner's claims implicate three separate contracts for three separate winter seasons: 2021-22, 2022-23, and 2023-24. (ECF No. 10 at 3–4.) It further contends

that because the snow removal "Projects" for the 2021-22 and 2022-23 winter seasons were fully completed in early 2022 and early 2023, respectively, any lawsuit seeking recovery for amounts due relating to those two time periods must be filed in Illinois because no claims were made until more than six months after the end of those seasons. (*Id.* at 6–12.) Class One also presents a series of arguments that the forum selection clause should not apply to the final, 2023-24 winter season.[1] (*Id.* at 12–13.)

In response, Wesner also fails to account for its claims relating to the 2020-21 winter season. Wesner instead argues that this case can remain with this Court because its claims for payment were filed within six months of the final termination of the parties' relationship. Wesner thus characterizes the parties' relationship as a single ongoing matter, documented in the December 1, 2021 purchase order and then continuing by mutual agreement through the following seasons. (ECF No. 12 at 9–13.) Under Wesner's version of the facts, the forum selection clause requires that this litigation proceed in Wisconsin, because the case was brought within six months of the completion of Wesner's work. (*Id.* at 9–10.)

For the reasons set forth below, the Court concludes that the parties' forum selection clause surrounding the work done during the 2021-22, 2022-23, and 2023-24 winter seasons allows Wesner to proceed with its claims in this Court. Wesner's last day of work was in March 2024, and it brought this case in Wisconsin in June 2024, consistent with the forum selection clause. The claims surrounding the 2020-21 winter season do not appear to be governed by a forum selection clause and are therefore also properly brought before this Court. Class One's motion is denied.

I. **Despite the Lack of Detailed Documentation, the Record Confirms that the Parties Had One Contract During the Periods in Dispute.**

Wesner opposes Class One's motion by insisting that this litigation was timely commenced within six months of the termination of the parties' relationship, and thus any disputes over the amounts due must be litigated in Wisconsin. Wesner contends the parties began to operate under a single contract in December 2021 and then amended that contract by email in late 2022, and then amended it again orally in late 2023. (ECF No. 12 at 10–11.) In Wesner's view, Class One's use

---

[1] Class One's arguments ignore several inconvenient facts. For example, Class One offers no explanation for how the forum selection clause would apply to Wesner's claims relating to the 2020-21 winter season, which preceded the existence of the forum selection clause. It also tries to sidestep application of the clause to the 2023-24 winter season. Because Class One's arguments are all premised on the assumption that there are multiple contracts at issue, a premise the Court rejects, the Court will not address Class One's disregard for the 2020-21 winter season or its efforts to evade application of the purchase order to the 2023-24 winter season.

of the word "extended" in its December 1, 2022 email confirms that it understood the parties had one contract that they then twice extended. (*Id.* at 10.) Based on this chronology, Wesner argues that it properly filed this action in Wisconsin on June 27, 2024, within six months of its last day of work.[2] (*Id.* at 10, 12.)

In reply, Class One points to the terms of the December 1, 2021 purchase order, which provide that the contract would "terminate" on May 1, 2022. (ECF No. 14 at 7–8.) Class One explains that when it emailed Wesner on December 1, 2022 with an offer to continue their relationship for the following year, the parties' contract under the December 1, 2021 purchase order had already terminated. (*Id.* at 8.) Class One thus characterizes the parties' relationship during the 2022–23 winter season as being governed by a second contract that was a renewal of the first contract, not an extension. (*Id.*) It points out that the second contract was given a new number and referred to the 2021–22 contract as the "original contract." (*Id.* at 9.) Class One also argues that the work done for the 2021–22, 2022–23, and 2023–24 winter seasons had an offer, acceptance, and consideration, and, thus, the use of the word "extension" is immaterial. (*Id.* at 8.)

Courts may properly consider the terms of written contracts at the motion to dismiss stage. *Badgerland Restoration & Remodeling, Inc. v. Federated Mut. Ins. Co.*, 8 N.W.3d 877, 883 (Wis. Ct. App. 2024). Contract interpretation generally seeks to give effect to the parties' intentions; however, "unambiguous contract language controls contract interpretation." *Tufail v. Midwest Hosp., LLC*, 833 N.W.2d 586, 592 (Wis. 2013) (quoting *Kernz v. J.L. French Corp.*, 667 N.W.2d 751, 755 (Wis. Ct. App. 2003)). If the terms of a contract are clear and unambiguous, the contract is construed according to its literal terms; the parties' intent is presumed to be evidenced by the words they chose. *Id.* Contract language is construed according to its plain or ordinary meaning, consistent with what a reasonable person would understand the words to mean under the circumstances. *Id.*

The record confirms that Class One sent its purchase order number SP58589UP to Wesner on December 1, 2021. By its terms, the purchase order was to terminate on May 1, 2022. (ECF No. 1-1 at 14.) It is undisputed, however, that the parties' relationship did not terminate on that date but instead continued for two more winter seasons. On December 1, 2022, Class One sent an

---

[2] Wesner also argues that the forum selection clause is void under Wis. Stat. § 779.135, which precludes such clauses in construction contracts. (ECF No. 12 at 7–9.) The Court is skeptical that snow removal contracts are construction contracts, but it need not address this issue because it concludes the parties had just one contract and that agreement allows the litigation to proceed in Wisconsin.

email to Wesner offering to "*extend*[] previous Snow Removal Contract #SP5859UP" until May 31, 2023. (ECF No. 10-4 at 2 (emphasis added).) The email added that "[a] new Contract number of SP6809UP has been assigned for the [2022–23] snow removal season . . . ." (*Id.*) The email also provided that, other than the dates of service, all terms and conditions "stated in [the] original contract *will remain the same* . . . ." (*Id.* (emphasis added).) Although few facts are provided for their last agreement, the parties agree that oral communications to again extend the contract were made "[l]eading up to the 2023–24 snow season," and that it was understood the parties "would continue as with prior seasons . . . ." (ECF No. 12 at 6.)

While Class One contends that its email was intended to create an entirely new and separate contract for the 2021–22 winter season, the documentation does not corroborate that view. Indeed, the email confirms Class One's intention that the parties would operate under the exact same terms as the prior year, and Class One used the word "extend," which means "to cause to be longer," or to "prolong."[3] (ECF No. 10-4 at 2.) This language confirms that Class One intended to prolong the 2021–22 contract, continuing the parties' relationship notwithstanding the termination date in the original purchase order. Class One protests that it could not extend a contract that had expressly terminated. (ECF No. 14 at 7–9.) But there is no reason the parties could not have mutually agreed to continue their original contract, adjusting only the termination date. Indeed, based on their conduct, that is exactly what the parties did. Wisconsin courts have long held that, when it comes to the freedom to contract, "individuals should have the power to govern their own affairs without governmental interferences." *In re F.T.R.*, 833 N.W.2d 634, 649 (Wis. 2013) (quoting *Merten v. Nathan*, 321 N.W.2d 173, 177 (Wis. 1982)). In other words, if Wesner and Class One wanted to extend a previously terminated contract, they were free to do so. Based on the plain language of the contract, the contract began in December 2021, had an initial termination date of May 2022, and Class One twice extended the termination date, so that it ended in May 2024.

II. **The Forum Selection Clause Requires Litigation in Wisconsin for the Claims Surrounding the 2021-22, 2022-23, and 2023-24 Winter Seasons.**

Under the plain terms of the contract, an action commenced within six months of the completion of Wesner's work must be filed in Wisconsin. (ECF No. 1-1 at 22.) Class One does not disagree that this clause is valid and enforceable. (*See* ECF No. 10 at 6–9.) This action was commenced within six months of the completion of Wesner's work, because Wesner and Class

---

[3] *Extend*, Merriam-Webster, https://www.merriam-webster.com/dictionary/extend.

One terminated the relationship in March 2024, (ECF No. 1-1 at 9), and Wesner filed its complaint on June 27, 2024, (*id.* at 5). Therefore, the claims surrounding the 2021-22, 2022-23, and 2023-24 winter seasons are properly brought before this Court under the forum selection clause. The parties have not shown they have any agreement regarding the forum for the 2020-21 winter season, nor have they shown any reason claims as to that winter season could not be litigated here. Accordingly, Class One's motion is denied.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Transfer, ECF No. 10, is **DENIED.**

Dated at Milwaukee, Wisconsin on November 8, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge