TFB/ALC          10830-24002

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| WESNER DEVELOPMENT, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:24-cv-00947 |
| CLASS ONE PROFESSIONALS LLC, | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COUNT III OF COMPLAINT**

Defendant, CLASS ONE PROFESSIONALS, LLC ("Defendant" or "Class One"), by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 12(b)(6), submits this Memorandum of Law in Support of Defendant's Motion to Dismiss Count III of Complaint and requests that this Honorable Court enter an order dismissing Count III of Plaintiff WESNER DEVELOPMENT, LLC d/b/a SNOW PATROL's Complaint, with prejudice, for failure to state a claim upon which relief can be granted. In support hereof, Defendant states as follows:

**INTRODUCTION**

Defendant Class One Professionals, LLC hired Plaintiff Wesner Development, LLC d/b/a Snow Patrol ("Snow Patrol") to perform snow and ice removal services as a subcontractor at Union Pacific's Butler Rail Yard in Milwaukee, Wisconsin, for several successive snow seasons, including the 2021-2022, 2022-2023, and 2023-2024 snow seasons. Snow Patrol now claims that it was not reimbursed for the salt it used during the snow seasons in 2021-2022, 2022-2023, and 2023-2024. In Count III of the Complaint, Snow Patrol alleges a claim for theft by contractor, a

1

statutory cause of action created by the construction lien law in Wis. Stat. §779.02(5). However, snow and ice removal is not an "improvement" and salt is not a "material" within the meaning of the construction lien law, of which Wis. Stat. §779.02(5) is part. As such, Count III must be dismissed with prejudice.

## STATEMENT OF FACTS

On June 27, 2024, Plaintiff filed a Complaint against Class One alleging claims for breach of contract (Count I), *quantum meruit* (Count II), and theft by contractor (Count III). Dkt. 1-1. The Complaint alleges the following facts:[1]

- Class One contracted with Union Pacific Railroad ("Union Pacific") to perform maintenance work, including snow and ice control services, at the Butler Rail Yard ("Butler") in Milwaukee, Wisconsin, among other things. Dkt. 1-1, pp. 6-7, ¶¶6-7.

- Beginning in 2018, Class One subcontracted with Snow Patrol to provide plowing and salting services at Butler. Dkt. 1-1, p. 7, ¶8.

- Pursuant to this agreement between Class One and Snow Patrol, Class One paid Snow Patrol for salt that Snow Patrol supplied while performing the aforementioned snow and ice removal services at Butler. Dkt. 1-1, p. 7, ¶10.

- On December 1, 2021, Class One and Snow Patrol entered into a new written contract ("Contract") for snow removal services at Butler for the 2021-2022 snow season. Dkt. 1-1, p. 7, ¶¶12-14.

- Specifically, the Scope of Work is defined in the Contract as follows:

> SCOPE OF WORK
>
> Furnish all labor, equipment, tools, supplies, services and other necessary incidentals, and adequate supervision necessary to provide snow plowing services as directed by the Construction Manager.
>
> Site: Butler Yard
> 4823 N 119th St. and 2820 S. 7th St.
> Milwaukee, WI 53215

\*\*\*

---

[1] Class One disputes these facts, but because this is a motion to dismiss brought pursuant to Fed. R. Civ. Pro. 12(b)(6), this motion assumes the truth of these facts.



Dkt. 1-1, p. 24.

- Between December 2020[2] to March 2024, Snow Patrol provided snow plowing and salting services for Butler. Dkt. 1-1, p. 8, ¶15.

- Snow Patrol submitted invoices that identified the quantity of salt supplied by Snow Patrol used during these services. Dkt. 1-1, p. 8, ¶16.

- Snow Patrol regularly requested that Class One supply salt for the replacement of salt used by Snow Patrol. Dkt. 1-1, p. 8, ¶20.

- Class One made representations that Union Pacific would supply replacement salt, but no, or minimal, salt deliveries occurred during the relevant time period. Dkt. 1-1, p. 9, ¶23.

- Snow Patrol estimates that between December 2020 and March 2024, Snow Patrol supplied 2,007 tons of road salt and 361 bags of small particle water softener salt to Butler. Dkt. 1-1, p. 9, ¶25.

- The maintenance services and salt supplied by Snow Patrol were used and consumed for the benefit of Butler. Dkt. 1-1, p. 11, ¶42.

- Clas One was paid by Union Pacific, the owner of the Butler Yard, for the salt supplied by Snow Patrol. Dkt. 1-1, p. 11, ¶43.

- The payments by Union Pacific to Class One constitute trust funds for payment of claims due salt used and services provided for the improvements to the Butler Yard pursuant to Wis. Stat. §779.02(5). Dkt. 1-1, p. 11, ¶44.

---

[2]  As an aside, Snow Patrol is mistaken in alleging that the new contract began in December 2020 in Paragraphs 11, 15, 25, and elsewhere. As Paragraph 12 states, the new contract was adopted for the 2021 to 2022 snow season, which began on December 1, 2021. The Contract, which is attached as Exhibit A to the Complaint, has an effective date of December 1, 2021. Dkt. 1-1, p. 14. The handwritten modifications to the scope of work were not added to the Contract until January 21, 2022. Dkt. 1-1, p. 28. All parts of the 2020 to 2021 snow season (which occurred from December 1, 2020 to the end of March 2021) were governed under a different contract that is not at issue here.

- Class One intentionally used the monies paid by Union Pacific for purposes other than to pay Snow Patrol for the salt supplied by Snow Patrol. Dkt. 1-1, pp. 11-12, ¶¶45-46.

- Class One's use of the subject funds is theft under Wis. Stat. §779.02(5) and §943.20. Dkt. 1-1, p. 12, ¶47.

Snow Patrol also attached the Contract as Exhibit A to the Complaint. Dkt. 1-1, pp. 14-29.

## ARGUMENT

**A.     Legal Standard**

A motion to dismiss under the Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) ("[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' … a claim must be dismissed.").

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) *citing Iqbal*, 556 U.S. at 678.

"In reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, [courts] accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

4

**B.     Snow Patrol is Not Entitled To Recover For Theft By Contractor Because Snow and Ice Removal Services Are Not Improvements Within the Meaning of Wis. Stat. 779.02(5)**

As a matter of law, the theft by contractor claim pled in Count III of the Complaint must be dismissed with prejudice because snow removal is not an "improvement" within the plain and ordinary meaning of Wis. Stat. §779.02(5). Theft by contractor, which is codified in Wis. Stat. §779.02(5), makes the misappropriation of contractor trust funds punishable as a theft under Wis. Stat. § 943.20. *See Tri-Tech Corp. of America v. Americomp Services,* 254 Wis. 2d 418, 422 (2002). Wis. Stat. §779.02(5) creates a trust in the money paid by the owner to the prime contractor for improvements to the subject premises, which exists until all claims against the funds have been paid. Wis. Stat. §779.02(5). Specifically, §779.02(5) provides, in pertinent part:

> (5) Theft by contractors. The proceeds of any mortgage on land paid to any prime contractor or any subcontractor for *improvements* upon the mortgaged premises, and **all moneys paid to any prime contractor or subcontractor by any owner for *improvements*, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, *materials*, plans, and specifications used for the *improvements*, until all the claims have been paid,** and shall not be a trust fund in the hands of any other person. The use of any such moneys by any prime contractor or subcontractor for any other purpose until all claims, except those which are the subject of a bona fide dispute and then only to the extent of the amount actually in dispute, have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under s. 943.20.

Wis. Stat. Ann. §779.02(5). "In order to establish that a trust exists" the plaintiffs must prove: "(1) an owner (2) paid monies (3) to [the prime contractor] (4) **for improvements** (5) and that [the prime contractor] used the monies in trust for purposes other than paying the claims of subcontractors for labor or materials used for **improvements**." *SJ Properties Suites v. STJ, P.C.,* 759 F. Supp. 2d 1032, 1041 (E.D. Wis. 2010). *See also Tri-Tech,* 254 Wis. 2d at 431-32.

5

It must be emphasized that both the plain language of §779.02(5) and the interpretive case law *require* that the money at issue be paid for improvements on the subject premises before a trust can be imposed. The question becomes what the term "improvements" means and whether it can be construed to encompass snow and ice removal (it cannot).

> 1. **Both the Plain and Ordinary Meaning of "Improvement" and the Definition of "Improvement" Set Forth in §779.01 Applies to §779.02(5)**

The term "improvement" as used in §779.02(5) must be construed consistently with both the use of "improvement" as defined in §779.01 and with the plain and ordinary meaning of the term "improvement." In statutory construction, the text controls. *See United States v. Heon Seok Lee,* 937 F.3d 797, 816 (7th Cir. 2019) *citing* ANTONIN SCALIA AND BRYAN A. GARNER, Reading Law: The Interpretation of Legal Texts, 221 (2012) (stating elsewhere "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Sojenhomer LLC v. Village of Egg Harbor,* 2024 WI 25, ¶38 (2024). "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole . . . and reasonably, to avoid absurd or unreasonable results." *Id.* "Statutory language is read where possible to give effect to every word, in order to avoid surplusage." *Id.* Canons of statutory construction, like dictionaries, aid courts in determining the common and approved usage of words in the statute to ascertain their plain meaning. *Id.* at ¶40.

The Presumption of Consistent Usage, also called *in pari materia*, is a canon of statutory construction that presumes that a single word has the same meaning throughout a statute. *See generally Medical College of Wisconsin Affiliated Hospitals, Inc. v. United States,* 854 F.3d 930,

933 (7th Cir. 2017). Often, a statute defines a term and specifies the subsections in which that term has the defined meaning. *Id.*

The term "improvement" is defined in Section 779.01:

SUBCHAPTER I[3]
CONSTRUCTION LIENS

(1) Name of law. This subchapter may be referred to as the construction lien law.

(2) Definitions. In this subchapter unless the context or subject matter requires otherwise:

> (a) "Improve" or "improvement" includes any building, structure, erection, fixture, demolition, alteration, excavation, filling, grading, tiling, planting, clearing, landscaping, repairing, or remodeling which is built, erected, made or done on or to land for its benefit. This enumeration is intended as an extension rather than a limitation of the normal meaning and scope of "improve" and "improvement."

Wis. Stat. §779.01. The theft by contractor provision, found in Wis. Stat. §779.02(5), is also codified in Subchapter I of Chapter 779. This means that the definition of "improvement" in §779.01 must be used when construing "improvement" in §779.02(5).

However, Wis. Stat. §779.01(2)(a) does not provide a comprehensive definition of the word "improvement" that supplants its plain and ordinary meaning, as the statute makes reference to "the normal meaning and scope of 'improve' and 'improvement.'" Wis. Stat. §779.01. This phrase indicates that the legislature intended the ordinary meaning of "improvement" to also be applied. *See Troutman v. FMC Corp.,* 115 Wis. 2d 683, 687 (Ct. App. 1983) (construing "improvement" in predecessor statute based upon dictionary definition).

---

[3] The version of the construction lien law available on the Wisconsin State Legislature website includes headings that specify where each subchapter begins. *See* Wisconsin State Legislature, available at *https://docs.legis.wisconsin.gov/statutes/statutes/779.pdf* (last visited November 20, 2024). This makes it clear that both §779.01 and §779.02(5) are part of Subchapter I. This heading does not appear on the face of the version available on LexisNexis.

7

The dictionary definition of "improvement" is "[a]n addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." *Improvement*, Black's Law Dictionary, (9th Ed., 2009). Similarly, "improve" means "to increase the value of (land or property) by making it more useful for humans (as by cultivation or the erection of buildings)." *Improve*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/improve (last visited Nov. 20, 2024).

These definitions, which point to construction work and land development, demonstrate that snow removal services are not an "improvement" within the meaning of §779.01 or §779.02(5). Snow removal contractors are acting on snow and ice on the surface of the land, not the land itself, and are not involved in building anything. The practice does not alter the land at all or change the inherent value or utility of the land. Removing ice from a rail yard, for example, does not provide the rail yard with additional functionality or utility that did not previously exist. Snow removal is merely the removal of a temporary nuisance created by weather conditions. It does add anything or develop a useful feature of the land that does not already exist.

As a matter of law, Snow Patrol cannot sustain a claim against Class One for theft by contractor under §779.02(5) because the snow and ice removal services provided by Snow Patrol are not "improvements" as defined in §779.01. Because the money paid by Union Pacific to Class One for snow removal services was not paid for improvements to the land, no trust fund has been established over those funds as a matter of law, which bars Snow Patrol's recovery for theft by contractor. As such, Count III must be dismissed with prejudice.

    **2.    Snow and Ice Removal Services Do Not Constitute "Clearing" or a "Repair" Under §779.01**

Turning to the specific terms identified as "improvements" in §779.01, the term "clearing" cannot be construed to encompass snow and ice removal services. "To clear" means

"to remove unwanted growth or items from." *Clear*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/clear (last visited November 20, 2024). As such, the word "clearing" is primarily understood to encompass the removal of plant matter and of fixtures, as would be done during the demolition portion of construction projects. Removing snow and ice does not fall within the definition of "clearing," as ice and snow are not "plants" or "items," or fixtures; they are transitory weather conditions that are not part of the land.

Likewise, snow and ice removal is not a "repair." Repair means "to restore by replacing a part or putting together what is torn or broken." *Repair*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/repair (last visited November 20, 2024). Snow and ice removal does not involve fixing anything on the land that is broken. The Butler Yard was not broken merely because it snowed. Further, even if a snow fall did cause a fixture in the Butler Yard to become broken, removing snow and ice from the broken fixture after the fact does not fix the underlying broken condition.

Assuming arguendo that the dictionary definition of "clearing" and "repairing" do not resolve this ambiguity (it does), the text of the statute itself can be consulted for clarification. "[T]he principle of *noscitur a sociis*—a word is known by the company it keeps—[is used] to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words.'" *Citizens Ins. Co. of Am. v. Wynndalco Enters.,* LLC, 70 F.4th 987, 1004 (7th Cir. 2023).

Here, the word "clearing" appears in §779.01 after the word "planting" and before "landscaping." These words relate to the modification of plant cover. *See Plant*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/plant (last visited Nov. 20, 2024) ("to put or set in the ground for growth"); *Landscape*, Merriam-Webster.com,

9

https://www.merriam-webster.com/dictionary/landscaping (last visited Nov. 20, 2024) ("to modify or ornament (a natural landscape) by altering the plant cover").

Likewise, §779.01 also references "demolition" and "excavation," which are stages of land development that create construction detritus that must be removed from the land. *See Demolish*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/demolish (last visited Nov. 20, 2024)("tear down, raze; break to pieces: smash"); See *Excavate*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/excavating (last visited Nov. 20, 2024) ("to dig out and remove").

"Repairing" appears between "landscaping" and "remodeling." *Remodel*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/remodel (last visited Nov. 20, 2024) ("to alter the structure of: remake). The implication of including "repairing" between "landscaping" and "remodeling" is that, to be considered an improvement, the alterations to the property must involve making substantive modifications to permanent structures or fixtures that are already present on the Property.

The placement of these words provides context clues from which it can be inferred that (1) "clearing" refers to the removal of permanent fixtures from the land as part of a larger construction project, such as plant cover and construction debris, not snow and ice; and (2) "repairing" relates to restoring the function of a physical component of the property, like a fixture or structure, after it has been broken. These terms do not relate to the removal of a temporary nuisance created by temporary weather condition, as is the case in snow and ice removal. Holding otherwise is at odds with the plain language of the statute.

10

As a matter of law, snow and ice removal is not "clearing," or "repair" and is thus not an "improvement" within the definition of §779.01. Accordingly, Count III must be dismissed with prejudice.

### 3. Snow and Ice Removal Does Not Benefit the Land

Snow and ice removal also does not benefit the land within the meaning of Section 779.01. Section 779.01 requires that the "improvement" be "made or done on or ***to the land** for **its benefit.***" Wis. Stat. §779.01(2)(a) (emphasis added). The plain and ordinary meaning of "benefit" is "profit or gain." *Benefit*, Black's Law Dictionary, (9th Ed., 2009). In other words, the land must be made more valuable by the improvement.

Snow and ice removal does not serve to benefit the land; it does not increase the value of the land, even temporarily. Any benefit provided by snow and ice removal is for the *people* that encounter the land while the snowy and icy conditions persist. Snow and ice removal does not intrinsically increase the utility or value of the land itself, as a construction project would. Further, snow and ice removal is not done *to* the land, it is done to the snow and ice *on* the land. Ignoring the phrase "to the land for its benefit" in §779.01(2)(a) would fail to give meaning to every portion of the statute, which is contrary to the principles of statutory construction.

Moreover, Snow Patrol's Complaint does not allege any facts to support the conclusion that the land was actually benefitted by Snow Patrol's work. Snow Patrol merely alleges that its "maintenance services" (*i.e.,* snow and ice removal services) and salt were used and consumed "for the benefit of the real property identified as the Butler Yard Site," but does not specify the nature of the benefit or attempt to put a monetary value on the benefit conferred on the Butler Yard. Dkt. 1-1, p. 11, ¶42. Snow Patrol's allegations are conclusory and must be disregarded when construing the facts in favor of Snow Patrol in ruling on this motion.

Snow Patrol cannot sustain a claim against Class One for theft by contractor under §779.01 because the snow and ice removal services provided by Snow Patrol do not "benefit the land," and are thus not an improvement. As such, Count III must be dismissed with prejudice.

4. **Construing the term "Improvement" as Encompassing Snow and Ice Removal Conflicts With Other Portions of the Statute**

Sections 779.01 and 779.02(5) cannot be construed to encompass snow and ice removal services because this construction is contextually inappropriate. "Context is a primary determinant of meaning." *Sojenhomer,* 2024 WI at ¶40. *citing* SCALIA & GARNER, *supra* at 167. In construing a statute, the whole text is considered, including its structure and the logical relation of its parts. *Beeler v. Saul,* 977 F.3d 577, 585 (7th Cir. 2020). "[T]he provisions of a text should be interpreted in a way that renders them compatible." *USA Gymnastics v. Liberty Ins. Underwriters,* 27 F.4th 499, 516 (7th Cir. 2022). "[W]ords are given meaning by their context, and context includes the purpose of the text." *Sojenhomer,* 2024 WI at ¶40. *citing* SCALIA & GARNER, *supra* at 56. "A statute's title or heading is a permissible indicator of the meaning of its text." *United States v. Heon Seok Lee,* 937 F.3d 797, 812 (7th Cir. 2019).

The statute at issue was passed for the purpose of creating construction liens. The title of §779.01 is "Construction liens." Section 779.01(1) states that the name of Subchapter I is "the construction lien law." The liens created by §779.01 are referred to as "construction liens" throughout the statute. *See* Wis. Stat. §779.05; §779.135. The plain and ordinary definition of the term "construction" is "[t]he act of building by combining or arranging parts or elements; the thing so built." *Construction*, Black's Law Dictionary, (9th Ed., 2009).

The text of §779 makes clear that the legislature intended to pass laws benefitting contractors working within the construction industry. Snow removal is not construction work,

12

because it does not involve building structures or developing land. Construing §779.01(2)(a) as encompassing snow removal contradicts the text of §779 as a whole and is impermissible.

It must be noted that there is a not a single Wisconsin case involving a construction lien brought by a snow and ice removal contractor. Nor can Wisconsin case law be found allowing seasonal service industry workers involved in addressing temporary conditions (like lawn care services and pool cleaning services) to recover for theft by contractor. There is, however, one analogous case that held that snow removal services are not improvements or repairs under the Connecticut construction lien statute. *See generally Landscape Mgmt. Servs. v. Farmington Plaza Assocs., L.P.,* CV94 0539633S, 1996 Conn. Super. LEXIS 2452, at *2, 6 (Super. Ct. Sep. 18, 1996). While this opinion was not published, it can be consulted for persuasive authority. The reasoning set forth in this ruling should be adopted. As a matter of law, Count III must be dismissed with prejudice because it is contextually inappropriate based on the other terms of the statute to include snow and ice removal within the definition of "improvement" under §779.01.

### 5. Salt is Not A "Material" Within the Meaning of §779.01

Snow Patrol's theft by contractor claim seeks to recover for the alleged money paid by Union Pacific to Class One for the salt used by Snow Patrol at the Butler Rail Yard. Salt does not fit within the definition of the term "materials" in §779.01. Again, §779.02(5) imposes a trust fund "to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for … **materials**, … used for the improvements …" Wis. Stat. §779.02(5). The term "materials" is defined in §779.01 as "any **construction** materials, supplies, tools, fixtures …" Wis. Stat. §779.01(2)(bm). *See Construction*, Black's Law Dictionary, (9th Ed., 2009) ("[t]he act of building by combining or arranging parts or elements; the thing so built.").

13

The only conclusion to be reached is that a theft by contractor claim can only be brought if the supplied materials were "construction materials;" the subject materials were used to build something. The salt used in snow removal services is not used to build anything, and thus is not "material" within the meaning of §779.01 and §779.02(5) for which a trust fund can be imposed in the event of non-payment. Accordingly, a trust fund cannot be imposed upon payments made by Union Pacific to Class One for salt used by Snow Patrol for which Snow Patrol was not paid. Snow Patrol cannot state a claim for theft by contractor as a matter of law. Count III must be dismissed with prejudice.

Finally, Class One maintains that no such payments occurred. Class One did not charge Union Pacific for the salt purportedly used by Snow Patrol at the Butler Rail Yard during the 2021-2022, 2022-2023, and 2023-2024 snow removal seasons, nor did Class One withhold such payments from Snow Patrol.

WHEREFORE, Defendant CLASS ONE PROFESSIONALS, LLC, respectfully requests that this Honorable Court grant its motion to dismiss and dismiss with prejudice Count III of the Complaint, and for all other relief this Court deems proper and just.

Date: November 21, 2024

Respectfully submitted,

JOHNSON & BELL, LTD.

By: /s/ *Ava L. Caffarini*
Ava L. Caffarini
One of the attorneys for Defendant

Ava L. Caffarini
Johnson & Bell, Ltd.
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
(312) 372-0770
caffarinia@jbltd.com

**CERTIFICATE OF SERVICE**

I certify that on November 21, 2024, we filed the foregoing document using this Court's CM/ECF system and this document was served on all parties including Plaintiff through the Court's CM/ECF system.

/s/Ava L. Caffarini